IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE: ASBESTOS LITIGATION )
)
GERALD L. HICKMAN, )
)
    Plaintiff, )
)
v. ) Civil Action No. 16-308-LPS-SRF
)
A. W. CHESTERTON COMPANY, et al., )
)
    Defendants. )

**REPORT AND RECOMMENDATION**

**I. INTRODUCTION**

Presently before the court in this asbestos-related personal injury action is defendant Ford Motor Company's ("Ford") motion for summary judgment. (D.I. 150)[1] For the reasons that follow, the court recommends GRANTING-IN-PART and DENYING-IN-PART Ford's motion for summary judgment.

**II. BACKGROUND**

    **A. Procedural History**

Plaintiff Gerald Hickman ("Plaintiff") filed this personal injury action against multiple defendants on March 15, 2016, in the Superior Court of Delaware, asserting claims regarding his alleged harmful exposure to asbestos. (D.I. 1, Ex. 1) On April 27, 2016, the case was removed to this court by Defendant Crane Co. pursuant to 28 U.S.C. §§ 1442(a)(1), the federal officer

---

[1] All briefing associated with this motion can be found at D.I. 162; D.I. 179; D.I. 195.

removal statue,[2] and 1446. (D.I. 1) Plaintiff filed a First Amended Complaint on September 12, 2016. On June 20, 2017, Ford filed the pending motion for summary judgment. (D.I. 150)

### B. Facts

Plaintiff alleges he developed asbestosis and asbestos related pleural disease as a result of exposure to asbestos-containing materials during his service in the Navy,[3] as well as from his civilian work with automobiles. (D.I. 49 at ¶¶ 4, 11, 15) Plaintiff contends he was injured due to exposure to Defendants' asbestos-containing products. (*Id.* at ¶ 13) Accordingly, Plaintiff asserts claims for negligence, willful and wanton conduct, strict liability, and conspiracy. (*Id.* at 11-27)

Plaintiff was deposed on January 31 and February 1, 2017. (D.I. 98) Plaintiff did not produce any other fact or product identification witnesses for deposition.[4] In relation to Ford, Plaintiff alleges he experienced secondary exposure to asbestos from living in his family home from 1946-1958 with his father, who owned and operated Hickman's Service Station. (D.I. 49 at ¶¶ 15, 16) During the summers and weekends from 1961 to 1963, Plaintiff worked for Hitchens Chevron. (D.I. 162, Ex. B at 73:21-22; 187:2-6) He spent half his time pumping gas, and also performed oil changes or "lube jobs," assisted customers in the convenience store, and assisted his uncle with brake work. (*Id.* at 187:11-189:9) While in the Navy and stationed in Norfolk in 1970, Plaintiff pumped gas part time at Wayson's Exxon for "two or three" seasons. (*Id.* at

---

[2] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

[3] Because this Report and Recommendation only addresses Ford's motion for summary judgment, the court will not provide a recitation of the facts in relation to Plaintiff's lengthy naval career.

[4] The deadline for completion of depositions of all co-worker, product identification, and other exposure testimony witnesses was March 21, 2017. (D.I. 64 at 3-4)

2

107:23-108:3) He did not personally perform any brake work, but was around when mechanics performed such jobs. (*Id.* at 107:18-22)

Finally, Plaintiff testified about performing personal automotive work on his first wife's 1970 Ford Mustang, which was new when purchased. (D.I. 179, Ex. A at 155:11-20; 156:19-20; 225:11-21) He rebuilt the engine, changed out the exhaust, replaced the valve cover, and changed the brakes "three or four" times. (D.I. 162, Ex. B at 196:5-14)

### 1. Plaintiff's Product Identification Evidence

Plaintiff is the sole product identification witness in this case and his deposition occurred on January 31 and February 1, 2017. (D.I 149 at 5)

Plaintiff alleges he experienced secondary exposure to asbestos from living in his family home from 1946-1958 with his father, who owned and operated Hickman's Service Station. (D.I. 49 at ¶¶ 15, 16) He testified that his father performed brake work on trucks and cars and would use an air hose, which created dust. (D.I. 179, Ex. A at 217:5-10; 222:2-22) Plaintiff identified Ford, as well as Mack, Chrysler, and Chevrolet, as among the brands of vehicles on which his father performed work. (*Id.* at 217:9-10) His father would return home in his uniform, where Plaintiff would "sometimes" hug his father, whose clothes "could have" remained dusty from vehicle servicing work. (*Id.* at 219:2-17) However, he did not know the maintenance history of the vehicles serviced at Hickman's Service Station. (D.I. 162, Ex. B at 186:8-15) He also did not know the manufacturer of any parts removed or installed on any vehicle, including Fords. (*Id.* at 186:16-187:1)

While Plaintiff worked for Hitchens Chevron from 1961 to 1963, he assisted his uncle with brake work. (*Id.* at 187:11-189:9) He would clean up the dust after his uncle finished removing and replacing brakes. (*Id.* at 189:3-9) He has a general recollection of assisting his

3

uncle perform brake work on Fords, Chevrolets, and Chryslers. (*Id.* at 189:10-16) He did not know the brand or manufacturer of any of the brakes that were removed or installed. (*Id.* at 190:17-23)

While working at Wayson's Exxon in 1970, Plaintiff was present when mechanics performed brake work on vehicles. (*Id.* at 107:18-22) However, this work was "usually done during the daytime," and Plaintiff only worked in the evenings. (*Id.* at 108:6-10) On some occasions the mechanics continued their work into the night, and when this happened, Plaintiff would help with the mechanic work or clean up afterwards. (*Id.* at 108:10-13) Plaintiff could not recall the specific brands or manufacturers of brakes that were removed or installed. (*Id.* at 108:14-21)

Plaintiff also performed personal automotive work on his first wife's new 1970 Ford Mustang from the time it was purchased. (D.I. 179, Ex. A at 155:11-13; 156:19-22) He rebuilt the engine, changed out the exhaust, replaced the valve cover, and changed the brakes "three or four" times. (D.I. 162, Ex. B at 196:5-14) Plaintiff did not recall the brand name or manufacturer of any of the brakes or gaskets he removed from the vehicle, nor the manufacturer of the brakes or gaskets he installed. (*Id.* at 199:2-6; 201:7-12; 201:20-202:3) Plaintiff first testified that he did not know what work was performed on his wife's car prior to the time of their marriage. (*Id.* at 196:15-18) However, he later testified that his wife had not had the brakes changed before he first changed them in 1973. (D.I. 179, Ex. A at 197:9-18)

## III. LEGAL STANDARD

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

4

R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 247-48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

### B. Delaware Law

The parties do not dispute that Delaware law applies to all land based claims. (D.I. 129) Under Delaware law, a plaintiff asserting a claim for asbestos-related injuries must introduce evidence showing a product nexus between his exposure to a defendant's product and his asbestos-related injuries. *Cain v. Green Tweed & Co.*, 832 A.2d 737, 741 (Del. 2003) (citing *In re Asbestos Litig.*, 509 A.2d 1116, 1117 (Del. Super. Ct. 1986), *aff'd sub nom. Nicolet, Inc. v. Nutt*, 525 A.2d 146 (Del. 1987)).

Delaware courts have not followed the "frequency, proximity, and regularity" test,[5] first set forth in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), which has been adopted as the test in numerous jurisdictions. *Happel v. Anchor Packing Co.*, 2010 WL 7699063, at *1 (E.D. Pa. Oct. 14, 2010). Delaware courts simply require a plaintiff show that he was in proximity to the product at the time it was being used. *Nutt v. A.C. & S. Co.*, 517 A.2d 690, 692 (Del. Super. Ct. 1986). Plaintiff must show "that the asbestos product was used in an area where the plaintiff frequented, walked by, or worked adjacent to, with the result that fibers emanating from the use of the product would have been present in the area where the plaintiff

---

[5] The court, in *Lohrmann*, stated that to support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked. *Lohrmann*, 782 F.2d at 1162–63. The test for substantial factor causation found in *Lindstrom* appears to be consistent with this "frequency, regularity, proximity" test.

worked." *Cain*, 832 A.2d at 741. "Implicit within this product nexus standard is the requirement that the particular defendant's product to which the plaintiff alleges exposure must be susceptible to releasing fibers which are capable of ingestion or respiration into the plaintiff's body." *In re Asbestos Litig.*, 2007 WL 1651968, at *19 (Del. Super. Ct. May 31, 2007), *as corrected* (June 25, 2007) (*quoting Merganthaler v. Asbestos Corp. of America*, 1988 WL 116405 at *1-2 (Del. Super. Ct. 1988)).

This standard, known as the "product nexus standard," is meant to ensure that the plaintiff presents "a factual connection in space and time between a particular plaintiff and a particular defendant's product." *Id.* Delaware courts have held that a plaintiff can survive summary judgment if there is testimony that asbestos-containing products were used at a worksite during the time plaintiff was employed there. *Happel*, 2010 WL 7699063, at *1. However, it is insufficient to overcome summary judgment if the "time and place" testimony is based on speculation or conjecture. *Id.* (citing *In re: Asbestos Litigation*, 509 A.2d at 1117-18).

IV. DISCUSSION

    A. Negligence Claim

        1. Plaintiff's Exposure to a Ford Asbestos-Containing Product

The court should deny-in-part Ford's motion for summary judgment with respect to Ford's liability for Plaintiff's injuries allegedly caused by asbestos-containing brakes. Plaintiff has presented sufficient evidence that Ford supplied original asbestos-containing brakes, and that Plaintiff was exposed to this asbestos when he performed personal automotive work on his first wife's new 1970 Ford Mustang.

*Bernhardt v. Ford Motor Co.* is persuasive authority to reject Plaintiff's general and conclusory testimony with respect to exposure he relates to working in service stations in some

7

proximity to his uncle and father who performed maintenance, including brake maintenance, on, *inter alia*, Ford vehicles. 2010 WL 3005580, at *1 (Del. Super. Ct. July 30, 2010). In *Berhnhardt*, the court granted Ford's motion for summary judgment when the plaintiff failed to specify the vehicles he worked on, or whether the brakes he replaced were original to the vehicles. *Id.* at *1. In the case at bar, Plaintiff identified Ford as a type of vehicle serviced at both Hickman's Service Station and Hitchens Chevron, but he could not recall specifically what model or type of Ford vehicle he encountered. (D.I. 179, Ex. A at 217:9-10; D.I. 162, Ex. B at 189:10-16) Plaintiff did not know the maintenance history of the vehicles serviced, nor did he know the manufacturer of any parts removed or installed on any vehicle. (D.I. 162, Ex. B at 108:14-21; 186:8-15; 186:16-187:1; 190:17-23) As such, there is a foundation lacking to create a material issue of fact as to when, how, and to what manufacturer's asbestos-containing product Plaintiff was allegedly exposed.

However, unlike in *Bernhardt*, Plaintiff testified that he performed all of the maintenance work on his first wife's 1970 Ford Mustang, which was new when purchased. (D.I. 179, Ex. A at 155:11-13; 156:19-20) He rebuilt the engine, changed out the exhaust, replaced the valve cover, and replaced the brakes "three or four" times. (D.I. 162, Ex. B at 196:5-14) He testified that he first replaced the brakes in 1973, and that his wife had not had the brakes replaced before this time, meaning he removed and replaced the original brakes. (*Id.* at 197:9-18) Ford has not addressed this specific testimony in its briefs, other than a general denial that Plaintiff was in contact with an original, factory-installed Ford asbestos-containing part. (*See* D.I. 162; D.I. 195) While Ford appears to dismiss the testimony as self-serving and inconsistent with other parts of Plaintiff's testimony, the court finds it is based on Plaintiff's first-hand experience on a particular

vehicle and is sufficient to create an issue of fact on product nexus, precluding summary judgment.

Moreover, Plaintiff has presented sufficient evidence to create an issue of fact as to Ford's knowledge that its brakes contained asbestos. Mark Taylor, Ford's corporate representative, testified at a deposition in 2012 that from 1950 through the 1970s, all of Ford's cars had asbestos-containing brakes. (D.I. 179, Ex. B at 32:14-24) Ford did not begin its phase-out of asbestos-containing brake products from its vehicles until the "1983 model year Ranger vehicle, although certain other vehicle applications, such as those used in emergency vehicles, did not use asbestos prior to this date." (D.I. 179, Ex. F at Ans. to Interrogatory No. 4) Mr. Taylor testified that, as such, "every single car through 1984 had asbestos at least in the drum brakes," and "was designed by Ford to have asbestos brakes ... in order to meet the performance characteristics as outlined by Ford and not have noise or any other performance issues." (D.I. 179, Ex. C at 147:10-148:10) Viewed in the light most favorable to Plaintiff, a jury or fact finder could find that Ford supplied the original, asbestos-containing brakes to which Plaintiff was exposed, which raises a genuine issue of material fact with respect to Ford's liability for Plaintiff's injuries.

Because Plaintiff has established product nexus, the court should deny-in-part Ford's motion for summary judgment with respect to Ford's liability for Plaintiff's injuries allegedly caused by asbestos-containing brakes.

### 2. Ford's Duty to Warn

The court should deny-in-part Ford's motion for summary judgment with respect to Ford's duty to warn.

Plaintiff argues that under Delaware law, Ford had a duty to warn about the dangers of

9

asbestos in its automobiles. (D.I. 179 at 13) First, under Delaware law, Ford does not have a duty to warn of the hazards of asbestos incorporated in component parts manufactured by different companies. *Bernhardt*, 2010 WL 3005580, at *2 ("The Court d[oes] not hold Ford to an understanding of another manufacturer's asbestos-containing products."); *Wilkerson v. Am. Honda Motor Co., Inc.*, 2008 WL 162522, at *2 (Del. Super. Jan. 17, 2008) ("The duty to warn does not 'require a manufacturer to study and analyze the products of others and to warn users of risks of products.'"); *Angelini v. Abell-Howe Co.*, 1991 WL 215720, at *5 (Del. Super. Oct. 4, 1991) ("[A] manufacturer has no duty to warn about dangers associated with the use of another manufacturer's products, even when those products may be used in conjunction with the manufacturer's own [products]."). In *Bernhardt*, the court granted summary judgment in favor of Ford, rejecting the plaintiff's argument based on foreseeable harm. *Id.* The plaintiff unsuccessfully argued that Ford knew or should have foreseen the need for replacement of the brakes in its originally manufactured vehicles with asbestos-containing brake components manufactured by other companies. *Id.* Because the plaintiff failed to demonstrate any evidence of exposure to an original Ford part and establish product nexus, the court found that the foreseeability of harm was too "attenuated" to hold Ford liable for the plaintiff's alleged asbestos related injuries. *Id.*

However, there is a duty to warn based upon the characteristics of the manufacturer's own product, and any necessary warning must be tailored to the risks associated with the reasonably anticipated use of the manufacturer's own product. *Bernhardt*, 2010 WL 3005580, at *2; *Wilkerson*, 2008 WL 162522, at *2. And unlike in *Bernhardt*, the record at bar provides evidence of asbestos exposure due to an original Ford part. Plaintiff performed all of the maintenance work on his first wife's 1970 Ford Mustang, which was new when purchased. (D.I.

10

179, Ex. A at 155:11-13; 156:19-20) The maintenance work included removing and installing brakes, which Ford knew contained asbestos. (D.I. 162, Ex. B at 196:5-14) Therefore, the foreseeability of harm is not too "attenuated" to hold Ford liable for Plaintiff's alleged asbestos related injuries. Plaintiff has presented testimony based on his first-hand exposure to a particular Ford vehicle that is sufficient to create an issue of fact on the duty to warn of foreseeable harm, precluding summary judgment.

Therefore, the court should deny-in-part Ford's motion for summary judgment with respect to Ford's duty to warn.

### B. Willful and Wanton Claim

Ford's motion for summary judgment should be granted-in-part with respect to Plaintiff's punitive damages claim. In Count VI of the complaint, Plaintiff alleges Ford, and other defendants, acted "willfully and wantonly, for their own economic gain and with reckless indifference to the health and safety of Plaintiff Gerald L. Hickman" in including asbestos in their products and failing to warn of the associated hazards. (D.I. 49 at ¶ 31)

Punitive damages are limited to situations where "a defendant's conduct is 'outrageous,' owing to 'gross negligence,' 'willful, wanton, and reckless indifference for the rights of others,' or behavior even more deplorable." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 493 (2008) (internal citations omitted). "Punitive damages are not intended to compensate the plaintiff for a loss suffered, but instead are 'imposed for purposes of retribution and deterrence.'" *In re Asbestos Prod. Liab. Litig. (No. VI)*, 2014 WL 3353044, at *11 (E.D. Pa. July 9, 2014) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)).

Plaintiff fails to produce any evidence to show that Ford's conduct was willful, wanton,

11

or reckless.[6] Therefore, the court should grant-in-part Ford's motion for summary judgment with respect to Plaintiff's punitive damages claim.

### C. Strict Liability Claim

The court should grant-in-part Ford's motion for summary judgment with respect to Plaintiff's strict liability claim. Since the Delaware Supreme Court's decision in *Cline v. Prowler Industries of Maryland, Inc.*, 418 A.2d 968 (Del. 1980), Delaware courts have refused to extend strict liability to cases involving the sale of a product even where it is alleged that the product is inherently dangerous. *See Bell v. Celotex Corp.*, 1988 WL 7623 (Del. Super. Ct. Jan. 19, 1988); *Hammond by Hammond v. Colt Indus. Operating Corp.*, 565 A.2d 558 (Del. Super. Ct. 1989). In *Bell*, the court refused to apply a strict liability action because it found that the sale of asbestos products was not an abnormally dangerous activity, and that Delaware cases reject the concept of strict liability in the realm of sales. *Bell*, 1988 WL 7623, at *3; *see also Johnson v. Hockessin Tractor, Inc.*, 420 A.2d 154 (Del. 1980) ("The doctrine of strict liability has been pre-empted in this State in sales cases by the adoption of the Uniform Commercial Code."). Moreover, Plaintiff failed to set forth any legal argument in response to Ford's motion for summary judgment as to the strict liability claim. Therefore, the court should grant-in-part Ford's motion for summary judgment as to Plaintiff's strict liability claim.

### D. Conspiracy Claim

Ford's motion for summary judgment should be granted-in-part with respect to Plaintiff's conspiracy claim. In Count VIII of the complaint, Plaintiff alleges Ford, and other defendants, "knowingly and willfully conspired among themselves to perpetuate the actions and omissions

---

[6] As to Ford's alleged willful and wanton conduct, Plaintiff fails to raise any factual argument in his answering brief. (*See* D.I. 179 at 17) Instead, Plaintiff only responds with a single conclusory sentence citing to a Delaware Superior Court Proceeding Worksheet wherein the court denied Ford's motion for summary judgment on punitive damages. (D.I. 179, Ex. CC)

referred to herein, as well as aided and abetted their co-defendants ... in keeping the Plaintiff Gerald L. Hickman ... ignorant of the risks [he] faced when exposed to asbestos and asbestos-containing products knowing that [he] would not discover or realize the danger or would fail to protect [himself] against it." (D.I. 49 at ¶ 48)

Civil conspiracy requires the combination of two or more persons for an unlawful purpose or for the accomplishment of a lawful purpose by unlawful means, which conspiracy results in damages. *Nutt*, 517 A.2d at 694 (internal citations omitted). Civil conspiracy is not an independent cause of action in Delaware, but requires an underlying wrong which would be actionable absent the conspiracy. *See Phoenix Canada Oil Co. v. Texaco, Inc.*, 560 F. Supp. 1372, 1388 (D. Del. 1983); *McLaughlin v. Copeland,* 455 F. Supp. 749, 752 (D. Del. 1978), *aff'd*, 595 F.2d 1213 (3d Cir. 1979). With regard to asbestos litigation, the court found in *Nutt* that a conspiracy claim is stated if it is alleged that an asbestos company agreed with other asbestos companies to suppress knowledge of the dangers of asbestos; and pursuant to this conspiracy, the companies intentionally marketed their asbestos products without effective warnings; and that the plaintiffs were injured by such products of at least one of the conspirators. 517 A.2d at 695.

Plaintiff failed to set forth any legal argument in response to Ford's motion for summary judgment as to the conspiracy claim. (*See* D.I. 179) As such, Plaintiff has not produced any evidence regarding Ford's agreement with other defendants to suppress knowledge of the dangers of asbestos, or that they intentionally marketed their asbestos products without effective warnings. *Nutt*, 517 A.2d at 695. Therefore, the court should grant-in-part Ford's motion for summary judgment with respect to Plaintiff's conspiracy claim.

**V.    CONCLUSION**

For the foregoing reasons, the court recommends GRANTING-IN-PART and DENYING-IN-PART Ford's motion for summary judgment. (D.I. 150)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: December 12, 2017

Sherry R. Fallon
United States Magistrate Judge