IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE: ASBESTOS LITIGATION )
)
DANIEL J. HICKMAN, as Administrator )
of the Estate of Gerald L. Hickman, )
)
       Plaintiff, )
)
v. ) Civil Action No. 16-308-LPS-SRF
)
CBS CORPORATION, et al., )
)
       Defendants. )

**REPORT AND RECOMMENDATION**

## I. INTRODUCTION

Presently before the court in this asbestos-related personal injury action is a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed by defendant Air & Liquid Systems Corp. ("Air & Liquid").[1] (D.I. 138) For the following reasons, I recommend GRANTING defendant's motion for summary judgment.[2]

## II. BACKGROUND

### a. Procedural History

On March 15, 2016, plaintiff Gerald L. Hickman ("Mr. Hickman") originally filed this personal injury action against multiple defendants in the Superior Court of Delaware, asserting claims arising from Mr. Hickman's alleged harmful exposure to asbestos. (D.I. 1, Ex. 1) On April 27, 2016, the case was removed to this court by defendant CBS Corporation ("CBS")

---

[1] Air & Liquid is the successor-by-merger to Buffalo Pumps, Inc. (D.I. 139 at 1)
[2] The briefing for the pending motion is as follows: Air & Liquid's opening brief (D.I. 139), plaintiff's answering brief (D.I. 175), Air & Liquid's reply brief (D.I. 198), Air & Liquid's supplemental opening brief (D.I. 212), plaintiff's supplemental answering brief (D.I. 215), and Air & Liquid's supplemental reply brief (D.I. 218).

pursuant to 28 U.S.C. §§ 1442(a)(1), the federal officer removal statute,[3] and 1446. (D.I. 1) Plaintiff filed his first amended complaint (the "First Amended Complaint") on September 12, 2016. (D.I. 49) Air & Liquid filed its motion for summary judgment on June 20, 2017. (D.I. 138) Following Mr. Hickman's death, Daniel J. Hickman was named as the administrator of the Estate of Gerald L. Hickman and was substituted as plaintiff in this matter. (D.I. 233) Plaintiff filed his second amended complaint (the "Second Amended Complaint") on May 24, 2018. (*Id.*)

On October 24, 2017, the court ordered supplemental summary judgment briefing following the Third Circuit's decision in *In re: Asbestos Prods. Liab. Litig. (DeVries)*, 873 F.3d 232 (3d Cir. 2017). (D.I. 205) Supplemental briefing was completed for the present motion on April 5, 2018. (D.I. 212; D.I. 215; D.I. 218) On May 29, 2018, Air & Liquid's motion for summary judgment was denied without prejudice to renew the motion after the conclusion of the Supreme Court's review of *Devries*. (D.I. 234) The Supreme Court issued its decision on March 19, 2019, and the defendant requested renewal of Air & Liquid's motion for summary judgment. *See Air & Liquid Systems Corp. v. Devries*, 139 S. Ct. 986 (2019). (*See also* D.I. 251)

**b. Facts**

Mr. Hickman alleges that he developed asbestosis and asbestos-related pleural disease as a result of exposure to asbestos-containing materials during his career as an auto mechanic and as a fireman in the United States Navy. (D.I. 233 at ¶¶ 4, 11) Mr. Hickman contends that he was injured due to exposure to asbestos-containing products that defendant mixed, mined,

---

[3] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

2

manufactured, distributed, and sold. (*Id.* at ¶ 12) In his pleadings, plaintiff asserts claims for negligence, punitive damages, strict liability, and conspiracy. (*Id.* at ¶¶ 22-54)

Mr. Hickman was deposed on January 31, 2017 and February 1, 2017. (D.I. 98; D.I. 139 at 2) Plaintiff did not produce any other fact or product identification witnesses for deposition.

Mr. Hickman joined the United States Navy in 1963. (D.I. 233 at ¶ 11; D.I. 175, Ex. A at 11:6-8, 51:13-15) He attended basic training in San Diego, California for four months before traveling to Hawaii in January 1964. (D.I. 175, Ex. A at 51:13-17, 52:12-22, 75:13-18) Mr. Hickman spent approximately eighteen months in Hawaii, where he was assigned to the *USS Nicholas*, a destroyer. (*Id.* at 52:12-22, 75:22-76:1) He entered as a fireman apprentice and became a fireman on the *USS Nicholas*. (*Id.* at 76:6-23) As a fireman, Mr. Hickman worked in engine rooms, removing insulation from generators and service pumps. (*Id.* at 87:8-10, 87:14-24) He attended engineering school at the Great Lakes Naval Facility for four months, where he received a military rating of engineman. (*Id.* at 53:1-8, 53:22-54:2)

In 1965, Mr. Hickman was stationed on the *USS Impervious*, a minesweeper, in Long Beach, California. (D.I. 233 at ¶ 11; D.I. 175, Ex. A at 54:3-6, 91:5-6) He became a fireman second class on the *USS Impervious* and engaged in a more supervisory role, but still assisted in repairing diesel engines, pumps, valves, boilers, and air conditioning equipment. (D.I. 175, Ex. A at 91:7-16, 95:9-16) After two years aboard the *USS Impervious*, Mr. Hickman was stationed on the *USS Endurance*, a minesweeper, in Long Beach. (D.I. 233 at ¶ 11; D.I. 175, Ex. A at 54:10-17, 94:15-18) He repaired equipment in the engine room and was tasked with similar duties as he had on the *USS Impervious*. (D.I. 175, Ex. A at 96:5-19)

In 1968, Mr. Hickman completed an instructor training program for the Navy in Norfolk. (*Id.* at 55:5-13, 56:4-6) After this two-month program, he was transferred to the naval station in

Annapolis, Maryland, where he performed maintenance on training boats for midshipmen. (*Id.* at 56:14-21, 57:4-18) In 1970, Mr. Hickman was stationed in Vallejo, California, where he trained for Vietnam for three months. (*Id.* at 57:16-58:9, 109:2-15) Mr. Hickman entered as an engineman second class and became a engineman first class in Vallejo. (*Id.* at 109:16-24) He was deployed to Vietnam in early 1971, where he served for approximately nine months. (*Id.* at 58:13-20) While in Vietnam, Mr. Hickman patrolled, performed maintenance, and navigated boats. (*Id.* at 110:13-23)

When he returned from Vietnam in early 1972, he spent one month in Delaware before he was stationed on the *USS L.Y. Spear*, a submarine tender, in Norfolk. (*Id.* at 60:1-12, 113:4-16) He did not perform maintenance in the engine room on the *USS L.Y. Spear*, but instead performed "outside maintenance" on approximately eight submarines. (*Id.* at 114:9-17, 114:23-115:1) In performing "outside maintenance," he removed service pumps from the submarines. (*Id.* at 116:4-117:1) While serving on the *USS L.Y. Spear*, Mr. Hickman worked part-time for North Ship Co. as an outside machinist for approximately six months in 1974. (*Id.* at 118:15-24, 120:1-5) As an outside machinist, he removed pumps and valves from Navy ships and private vessels. (*Id.* at 120:1-14)

In 1975, Mr. Hickman was stationed on the Philadelphia Naval Base. (*Id.* at 61:22-62:12) He served at the Philadelphia Naval Base for approximately three years, repairing valves and pumps on inactive ships. (*Id.* at 62:10-12; 129:1-20) In December 1977, he was stationed on the *USS Lasalle*, a command ship, which travelled overseas to Bahrain. (*Id.* at 62:21-63:4, 138:2-11) Aboard the *USS Lasalle*, he served as chief petty officer and was, therefore, in charge of the maintenance department. (*Id.* at 138:12-18)

4

After one year on the *USS Lasalle*, Mr. Hickman was stationed on the *USS Opportune* in Little Creek, Virginia while he also worked at the naval station. (*Id.* at 63:5-10, 64:4-8) He left the Navy in 1983 and reenlisted in 1985.[4] (*Id.* at 64:17-18, 66:19-20) After reenlisting, he went to school in Norfolk and the Great Lakes before being stationed on the *USS Grapple* in Sturgeon Bay, Wisconsin. (*Id.* at 66:21-67:5, 67:24-68:7) After the *USS Grapple* was fully constructed in 1986, Mr. Hickman left for Norfolk, where he retired. (*Id.* at 67:10-68:14)

## III. LEGAL STANDARD

### a. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 322. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion of whether or not

---

[4] The Second Amended Complaint states that Mr. Hickman served in the Navy from 1963 to 1980. (D.I. 233 at ¶ 11) However, Mr. Hickman testified that he joined the Navy in 1963, left the service in 1983, reenlisted in 1985, and retired in 1986. (D.I. 175, Ex. A at 10:20-11:5, 64:17-18, 66:19-20, 67:10-68:14)

a fact is genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247-49 (emphasis in original). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322-23.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)–(3).

### b. Maritime Law: Product Identification/Causation

The parties do not dispute that maritime law applies to all Naval and sea-based claims. (D.I. 129) In order to establish causation in an asbestos claim under maritime law, a plaintiff must show, for each defendant, "that (1) he was exposed to the defendant's product, and (2) the

6

product was a substantial factor[5] in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)); *Dumas v. ABB Grp., Inc.*, 2015 WL 5766460, at *8 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016); *Mitchell v. Atwood & Morrill Co.*, 2016 WL 4522172, at *3 (D. Del. Aug. 29, 2016), *report and recommendation adopted*, 2016 WL 5122668 (D. Del. Sept. 19, 2016); *Denbow v. Air & Liquid Sys. Corp.*, 2017 WL 1199732, at *4 (D. Del. Mar. 30, 2017), *report and recommendation adopted*, 2017 WL 1427247 (D. Del. Apr. 19, 2017).

"In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or Decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time."[6] *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012) (citing *Stark*, 21 F. App'x at 376). On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient [to establish causation]. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. App'x at 376) (internal citation omitted). "Rather, the plaintiff must show 'a high enough level of exposure that an inference

---

[5] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement of Torts (2nd) for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

[6] However, "'substantial exposure is necessary to draw an inference from circumstantial evidence that the exposure was a *substantial* factor in causing the injury.'" *Stark*, 21 F. App'x at 376 (emphasis in original) (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. Apr. 25, 1991)).

that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict product[] liability." *Stark*, 21 F. App'x at 376 (citations omitted).

In *Devries*, the Supreme Court rejected "the more defendant-friendly bare-metal defense," which provided that "[i]f a manufacturer did not itself make, sell, or distribute the part or incorporate the part into the product, the manufacturer is not liable for harm caused by the integrated product . . . ." *Air & Liquid Systems Corp. v. Devries*, 139 S. Ct. 986, 993 (2019). The Supreme Court held that a product manufacturer has a duty to warn in the context of maritime tort law "when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger." *Id.* at 987, 995-96.

## IV. DISCUSSION

### a. Applicable Standard

The threshold question that the court must answer is the causation inquiry, that is, whether plaintiff has raised a genuine issue of material fact as to whether Mr. Hickman was substantially exposed to defendant's products. The court recommends dismissal on the basis that the plaintiff has not raised a genuine issue of material fact with respect to substantial factor causation.

### b. Air & Liquid

The defendant relies upon the deposition testimony of Mr. Hickman, the only product identification witness, to support its motion for summary judgment. Although Mr. Hickman

8

testified that he worked on Buffalo pumps during his service, he was unable to place Buffalo pumps aboard any specific ship. (D.I. 212, Ex. A at 232:1-11) Mr. Hickman could not recall the type, purpose, function, size, horsepower, operating temperature, material, or color of any Buffalo pump. (D.I. 212, Ex. B at 356:15-17, 359:24-360:7, 360:16-20, 361:2-6) Mr. Hickman did not recall the frequency with which he was exposed to a Buffalo pump as opposed to any other brand of pump, and could not state the first or last ship on which he was exposed to a Buffalo pump. (*Id.* at 356:18-22, 360:12-15) Mr. Hickman testified that he removed asbestos from pumps in the engine room on the *USS Nicholas*, but he was unable to identify from which pumps he removed asbestos. (D.I. 175, Ex. A at 84:5-9, 87:21-88:6, 175:20-176:14) While Mr. Hickman originally testified that asbestos was "probably on the packing or on the flanges or the body of the pump or the valve," he later clarified that he only associated the insulation around the flanges with asbestos. (D.I. 212, Ex. A at 232:24-233:2; Ex. B at 361:7-10) Mr. Hickman was unable to recall who manufactured or installed the insulation or when the insulation was installed. (D.I. 212, Ex. B at 356:23-357:11)

Plaintiff relies on Mr. Hickman's July 13, 2017, Unsworn Declaration Pursuant to 28 U.S.C. 1746 Under Penalty of Perjury (the "Unsworn Declaration") to supplement his deposition testimony. (D.I. 175, Ex. I) Defendant contests that this is a sham declaration because it contradicts Mr. Hickman's earlier deposition testimony and is, therefore, inadmissible. (D.I. 198 at 2-5) The Third Circuit has observed that "not all contradictory affidavits are necessarily shams." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 254 (3d Cir. 2007) (citing *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004)). However, "[w]hen a party does not explain the contradiction between a subsequent affidavit and a prior deposition, it is appropriate for the district court to disregard the subsequent affidavit and the alleged factual issue in dispute as a

9

'sham,' therefore not creating an impediment to a grant of summary judgment based on the deposition." *Id.* Here, Mr. Hickman was unable to recall the type of Buffalo pumps that he worked with in his deposition. (D.I. 212, Ex. B at 356:15-17, 359:24-360:7) However, the Unsworn Declaration recites seven different types of pumps: "auxiliary condenser circulating pumps, fire and flushing pumps, evaporating brine overboard pump, distilling condenser circulating pump, fresh water distilling pump, 1st effect coil pump, and main feed pumps." (D.I. 175, Ex. I) Plaintiff does not provide any explanation for this detail in his declaration compared to the striking lack of specificity in his deposition testimony taken only three months earlier. Therefore, it is appropriate for the court to disregard the attached Unsworn Declaration. Even assuming, *arguendo*, that the Unsworn Declaration was admissible, it does not establish the "frequency, regularity, or proximity" of Mr. Hickman's exposure to Buffalo pumps. *See Thomasson v. Air & Liquid Systems Corp.*, 2015 WL 1639730, at *4 (D.N.J. Apr. 9, 2015).

Furthermore, plaintiff contends that National Archives ship records from 1942 show that Buffalo pumps were used aboard DD class ships, such as the *USS Nicholas*. (D.I. 175 at 4-5; Ex. B) Plaintiff claims that Mr. Hickman served on the *USS Nicholas* in the mid-1960s and worked on Buffalo pumps at some point during his service. (*Id.*) Additionally, plaintiff argues that Buffalo pumps' service manuals directed their use with asbestos products, required asbestos to function, and/or contained asbestos components which needed to be removed or replaced. (*Id.* at 5; D.I. 215 at 1) Therefore, plaintiff concludes that there is a genuine issue of material fact as to whether an Air & Liquid product was a substantial factor in causing Mr. Hickman's injury.

Unauthenticated ship records showing that Buffalo pumps were present on DD class ships, such as the *USS Nicholas*, are insufficient to create a factual dispute regarding substantial factor causation. (D.I. 175, Ex. B) This evidence arguably demonstrates only the presence of

10

Buffalo pumps aboard a ship on which Mr. Hickman served some twenty years after the purported installation of the pumps, but does not establish Mr. Hickman's substantial exposure to these pumps. (*Id.*) *See also Lindstrom*, 424 F.3d at 492; *Walkup v. Air & Liquid Systems Corp.*, 2014 WL 2514353, at *7 (D. Del. June 4, 2014); *In re Asbestos Litig.*, 2019 WL 2124951, at *6 (D. Del. May 15, 2019). Buffalo's service manuals, indicating that it specified and/or supplied asbestos components for gaskets and packing on DD class ships like the *USS Nicholas* prior to the 1980s, are similarly insufficient to create a factual dispute regarding substantial factor causation. (D.I. 175, Ex. C) This evidence does not establish which gaskets and packing were on the pumps aboard the *USS Nicholas*, or how often the plaintiff worked on or around them. (*See id.*) Thus, the plaintiff's exhibits fail to create an issue of fact regarding Mr. Hickman's alleged substantial exposure.[7] *See Lindstrom*, 424 F.3d at 492; *Walkup*, 2014 WL 2514353, at *7; *In re Asbestos Litig.*, 2015 WL 5766460, at *12 (D. Del. Sept. 30, 2015).

Plaintiff additionally proffers Dr. Orn Eliasson's ("Dr. Eliasson") medical report, which opined that Mr. Hickman's asbestosis was caused by his asbestos exposure in the U.S. Navy. (D.I. 175, Ex. H) This evidence fails to create a factual dispute because Dr. Eliasson provides no evidence of causation between Mr. Hickman's alleged injuries and exposure to an Air & Liquid product in particular. *See Lindstrom*, 424 F.3d at 492.

---

[7] Plaintiff cites deposition testimony of two of Buffalo Pumps' corporate representatives, Martin Kevin Kraft ("Mr. Kraft") and Terrence William Kenny ("Mr. Kenny"), in similar asbestos-related personal injury cases to demonstrate circumstantial evidence of the inclusion of asbestos components, such as gaskets and packing in Buffalo pumps. (D.I. 175 at 5) Mr. Kraft's deposition testimony illustrates that Buffalo pumps used asbestos gasketing in closed coupled pumps, and began to change out asbestos gaskets and packing in the early 1980s. (D.I. 175, Ex. D at 78:3-7, 78:20-79:6) Mr. Kenny's deposition testimony discusses how gaskets and packing would not last the life of a pump and thereby required replacement. (D.I. 175, Ex. E at 92:3-12, 93:14-21) Mr. Kraft and Mr. Kenny's deposition testimony does not create a factual dispute regarding substantial factor causation. This evidence does not demonstrate "frequency, regularity, or proximity" necessary for substantial factor causation. *See Lindstrom*, 424 F.3d at 492; *Thomasson*, 2015 WL 1639730, at *4. (D.I. 212, Ex. A at 232:24-233:2; Ex. B at 361:7-10)

Thus, plaintiff has failed to create a genuine issue of material fact as to whether Air & Liquid's products were a substantial factor in causing Mr. Hickman's injuries. *See Lindstrom*, 424 F.3d at 492; *Damon v. Aireon Mfg. Corp.*, 2015 WL 9461593, at *1 n.1 (E.D. Pa. Sept. 1, 2015); *Walkup*, 2014 WL 2514353, at *7. Therefore, the court recommends granting Air & Liquid's motion for summary judgment.

### c. Punitive Damages

The court recommends that summary judgment be granted in favor of defendant Air & Liquid because plaintiff does not oppose defendant's motion with respect to the punitive damages count. (D.I. 175; D.I. 215)

### d. Conspiracy

The court recommends that summary judgment be granted in favor of defendant Air & Liquid because plaintiff does not oppose defendant's motion with respect to the conspiracy count. (D.I. 175; D.I. 215)

## V. CONCLUSION

For the foregoing reasons, the court recommends granting defendant's motion for summary judgment. (C.A. No. 16-308, D.I. 138)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: July 15, 2019

Sherry R. Fallon
United States Magistrate Judge